P4PJMANA

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4          v.                            25 Cr. 176 (MMG)

5  LUIGI NICHOLAS MANGIONE,

6                                        Arraignment
                   Defendant.
7  ------------------------------x

8
                                        New York, N.Y.
9                                       April 25, 2025
                                        1:00 p.m.
10

11 Before:

12                 HON. MARGARET M. GARNETT,

13                                      District Judge

14                       APPEARANCES

15 JAY CLAYTON
        United States Attorney for the
16      Southern District of New York
   DOMINIC A. GENTILE
17 JUN XIANG
   ALEXANDRA S. MESSITER
18 THOMAS JOHN WRIGHT
        Assistant United States Attorneys
19

   AGNIFILO INTRATER LLP
20      Attorneys for Defendant
   BY:  KAREN FRIEDMAN AGNIFILO
21      MARC ANTONY AGNIFILO
        JACOB KAPLAN
22      -and-
   MOSKOWITZ COLSON GINSBURG & SCHULMAN
23 BY:  AVRAHAM C. MOSKOWITZ

24 Also Present:

25 Sofia Agnifilo, Paralegal
   Thomas Ford, FBI

1          (Case called)

2          MR. GENTILE:  Good afternoon, your Honor.

3          Dominic Gentile, Jun Xiang, Alexander Messiter, and

4  Thomas John Wright for the United States.  Seated at the end of

5  our table is Special Agent Thomas Ford with the FBI.

6          THE COURT:  Good afternoon.

7          MS. FRIEDMAN AGNIFILO:  Good afternoon, your Honor.

8          Karen Friedman Agnifilo, Marc Agnifilo, Mr. Mangione,

9  Avi Moskowitz, Jacob Kaplan, and Sofia Agnifilo, our paralegal,

10  for Mr. Mangione.  Good afternoon.

11          THE COURT:  Good afternoon.  Everyone can be seated.

12          Before we begin, I just want to make a record about my

13  prior employment and my knowledge of the lawyers in this case.

14  From July of 2005 to October of 2017, I was an assistant United

15  States attorney in the United States Attorney's Office for the

16  Southern District of New York.  I returned to the office in

17  November 2021 as a deputy United States attorney and remained

18  in that role until May of 2023.  During that time, I was the

19  ultimate supervisor of every case in the criminal and civil

20  divisions of the U.S. Attorney's Office.

21          From May of 2023 to December of 2023, I was special

22  counsel to the U.S. attorney, and in that capacity supervised

23  all cases in the criminal division and certain cases in the

24  civil division.  During the time I was deputy U.S. attorney, I

25  participated in the interview process that resulted in

1    Ms. Messiter's hiring as an assistant United States attorney.

2    And other than that, I am only generally acquainted with these

3    four AUSAs, and I never worked with any of them directly on any

4    particular case or matter.

5        I also know Ms. Friedman Agnifilo as a law enforcement

6    partner on various issues and matters when she was at the

7    Manhattan District Attorney's Office, and I was variously at

8    the U.S. Attorney's Office and then chief of the criminal

9    division at the New York Attorney General's Office, and also

10   when I was commissioner of the New York City Department of

11   Investigation from 2018 to 2021.  We don't have a personal

12   relationship beyond our past professional work together.

13       I also know Mr. Moskowitz very well, both as a former

14   adversary in criminal cases and as a professional colleague in

15   the criminal bar of this court.  I don't believe that I know

16   Mr. Agnifilo or Mr. Kaplan.

17       I have rules specifically regarding my recusal from

18   U.S. Attorney's Office's matters which are posted on my public

19   website.  Mr. Gentile, have you reviewed those rules and have

20   you reviewed the files at the U.S. Attorney's Office related to

21   this matter?

22       MR. GENTILE:  We have, your Honor.

23       THE COURT:  And to the best of your knowledge, are you

24   aware of any reason why I should recuse from this matter?

25       MR. GENTILE:  We are not aware of any reason, your

P4PJMANA

1    Honor.

2         THE COURT:  Ms. Friedman Agnifilo, let me turn to you.

3    Are you aware of any reason why I should recuse from this

4    matter?

5         MS. FRIEDMAN AGNIFILO:  No, your Honor.

6         THE COURT:  Okay.  Based on my own knowledge of the

7    case and the representations of the government, I also don't

8    see any basis for recusal.  But Ms. Friedman Agnifilo, if you'd

9    like time to consult with your client, just send me a letter

10   within seven days of today if you change your mind or if you

11   have any issue you'd like to raise.  Obviously should facts

12   develop as the case proceeds that bear on anything related to

13   recusal, anyone should feel free to bring that to my attention.

14        Okay.  The next issue I'd like to address is the

15   appointment of Mr. Moskowitz.  On February 4 of this year,

16   Mr. Moskowitz was appointed as learned counsel under 18, United

17   States Code, Section 3005 by Magistrate Judge Parker upon

18   recommendation of the federal defender for this district.

19        I want to affirm and continue that appointment today,

20   as I agree with Ms. Brown and Judge Parker that Mr. Moskowitz

21   has the requisite criminal practice experience in this district

22   and in the law governing capital cases and in addition my own

23   observation, is both highly skilled and highly represented by

24   the Court and the criminal bar in this district.

25        So our primary purpose today is for the arraignment of

P4PJMANA

1    Mr. Mangione on the federal indictment which was returned

2    April 17 of this year and charges the defendant with one count

3    of stalking through travel in interstate commerce, one count of

4    stalking through the use of interstate facilities, one count of

5    murder through the use of a firearm, and one count of the use

6    of a firearm in relation to a crime of violence, including

7    brandishing and discharging that firearm and equipping the

8    firearm with a silencer.

9            Mr. Mangione, will you please stand.

10           Sir, have you seen a copy of the federal indictment

11   against you?

12           THE DEFENDANT:  I have.

13           THE COURT:  And have you had enough time to discuss it

14   with your lawyers?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Would you like me to read the indictment

17   out loud, or do you waive its public reading?

18           THE DEFENDANT:  I waive.

19           THE COURT:  And how do you wish to plead today?

20           THE DEFENDANT:  Not guilty.

21           THE COURT:  All right.  Thank you, sir.  You can be

22   seated.

23           Mr. Gentile, I understand the defendant first appeared

24   in this district pursuant to a *prosequendum* writ on December 19

25   of 2024; is that correct?

P4PJMANA

1          MR. GENTILE:  That's correct, Judge.

2          THE COURT:  He was presented in magistrate's court the

3     same day and ordered detained on consent without prejudice by

4     Judge Parker; is that right?

5          MR. GENTILE:  That's correct, Judge.

6          THE COURT:  Ms. Friedman Agnifilo, if in the future

7     you see any reason to make a renewed bail application, just

8     send that directly to me.  And I have rules on my public

9     website about how that should be presented.

10         MS. FRIEDMAN AGNIFILO:  Thank you, Judge.

11         THE COURT:  Okay.  Mr. Gentile, back to you.

12         Does the government anticipate filing any superseding

13    indictments, either adding defendants or additional charges in

14    this case?

15         MR. GENTILE:  Not at this time, Judge, no.

16         THE COURT:  I know there are identifiable victims in

17    the case, but is the government treating anyone other than

18    Mr. Thompson's family as victims entitled to statutory notice

19    in this case?

20         MR. GENTILE:  We are not, Judge.

21         THE COURT:  Do you have a process in place to ensure

22    that Mr. Thompson's family is notified of events and court

23    dates in this matter?

24         MR. GENTILE:  We do, your Honor.  We have our victim

25    witness coordinator in contact with the family, as is the

1   prosecution team.

2           THE COURT:  While I have you on your feet,

3   Mr. Gentile, why don't you describe for me and for the defense

4   what is the nature and status of the discovery in this case.

5           MR. GENTILE:  Your Honor, the government is in

6   possession of approximately one terabyte of data.  It

7   essentially boils down to about four tranches of information.

8   I can go through some of those tranches for the Court.  The

9   first tranche are returns from grand jury subpoenas that were

10  issued by the government to various social media companies,

11  financial companies, phone companies of the like.  That

12  approximates to about 110 gigabytes.

13          The second tranche are search warrant returns for

14  Google drive, historical cell site, iCloud.  That amounts to

15  about a gigabyte of materials.  The third tranche are from law

16  enforcement, basically NYPD files, videos, FBI files, social

17  media, and information obtained from the Pennsylvania

18  prosecutor's office.

19          And then the fourth tranche of information, which is

20  the largest, is one terabyte or approximately one terabyte from

21  the Manhattan District Attorney's Office, much of which

22  overlaps with the discovery materials I just recited for the

23  Court.

24          THE COURT:  What's the status of producing these

25  various categories of materials to the defense?

P4PJMANA

1          MR. GENTILE:  We're prepared to start producing to the

2     defense within the next two to three weeks.  We could probably

3     finish all the discovery in that timeframe.

4          THE COURT:  Okay.  And can you tell me, Mr. Gentile,

5     what is the state of your coordination with the Manhattan

6     District Attorney's Office, first in terms of discovery?  Are

7     the processes in place to ensure that, to the extent the

8     District Attorney's Office has issued search warrants or taken

9     other steps to gather discovery that you are receiving,

10    everything that has already been produced to the defendant and

11    anything that may be producible under federal law even if it's

12    not under state law?

13         MR. GENTILE:  Certainly, Judge.  As I just mentioned,

14    our largest tranche of information comes from the District

15    Attorney's Office.  We are in constant contact with them.  We

16    have continued to receive on a rolling basis everything that

17    they have produced to the defense counsel.  We have not gotten

18    everything.  We are in the process of obtaining all of that

19    materials from them.  I would say that I think it's fair to say

20    we have a majority of those materials from them, and we are

21    still waiting on certain extractions from electronic devices,

22    which has taken them some time to pull out.

23         THE COURT:  Okay.  And are there any post-arrest

24    statements by the defendant, either in Pennsylvania or after he

25    was brought to the district?

P4PJMANA

1          MR. GENTILE:  No, your Honor.

2          THE COURT:  Okay.  I'm going to order the government

3    to produce all discovery in their possession within 30 days of

4    today, which is — given the holiday, I'll say by Tuesday,

5    May 27.

6          MR. GENTILE:  Certainly, Judge.

7          THE COURT:  And Mr. Gentile, at this stage I'm not

8    going to hold you to it, but just so I have an understanding,

9    does the government have an expectation that expert testimony

10   will be needed at the guilt phase of this trial?

11         MR. GENTILE:  Did you say in the penalty?

12         THE COURT:  We have this beautiful space, but if we're

13   not all speaking in the microphones, the acoustics are not

14   great.

15         Whether the government presently expects expert

16   testimony to be necessary at the guilt phase of this trial.

17         MR. GENTILE:  We do, your Honor.  We expect at the

18   very least the medical examiner and possibly cell site experts

19   and phone company experts.

20         THE COURT:  Okay.  But nothing out of the ordinary for

21   a criminal case of this type?

22         MR. GENTILE:  No, your Honor.  Not at this time.

23         THE COURT:  Okay.  Let me just ask you briefly,

24   Ms. Friedman Agnifilo, whether at this point — again, I'm not

25   going to hold you to it, but just as we're thinking about the

P4PJMANA

1   schedule — whether at this stage the defense has a sense of any

2   expert testimony needed at the guilt phase for a defense case?

3        MS. FRIEDMAN AGNIFILO:  We're not prepared to address

4   that issue at this time, your Honor.

5        THE COURT:  Okay.  All right.  We'll return to that at

6   an appropriate time.

7        I know that Judge Parker has already entered an order

8   pursuant to the Federal Rule of Criminal Procedure 5(f)

9   concerning the government's obligations under *Brady v. Maryland*

10  and its progeny to disclose to the defense all information,

11  whether admissible or not, that is favorable to the defendant,

12  material to guilt or punishment, and known to the prosecution.

13       Mr. Gentile, can you just confirm that you understand

14  the government's obligations and either you have fulfilled or

15  will fulfill them within the time I've set for discovery.

16       MR. GENTILE:  Your Honor, the government is aware of

17  its obligations under *Brady* and its progeny, and we will comply

18  with those obligations as they arise.  With respect to

19  discovery, I'm sorry, I didn't get the last part of what you

20  said.

21       THE COURT:  To the extent any of that material is

22  currently in your possession, that you'll produce it to

23  Mr. Mangione within the time I've set for discovery.

24       MR. GENTILE:  Absolutely, Judge.  Yes.

25       THE COURT:  Mr. Gentile, what can you tell me about

1   your coordination with the District Attorney's Office regarding

2   a trial of this matter or anything else that relates to our

3   order of proceeding?

4           MR. GENTILE:  Your Honor, the District Attorney's

5   Office, I believe they have a trial already set for the fall.

6   I believe that they will be proceeding on their normal course.

7   We respectfully submit that we would proceed in our normal

8   course.  Given this is a capital case and there are issues that

9   need to be litigated beforehand, we would expect just the

10  nature of the two cases and the nature of the scheduling, that

11  the Manhattan District Attorney's Office will most likely

12  conduct their trial first, but we would not ask the Court to

13  make any special accommodations.  We just ask the Court to

14  proceed during the normal course.

15          THE COURT:  Ms. Friedman Agnifilo, what is the date

16  set in the state for Mr. Mangione's state trial?

17          MS. FRIEDMAN AGNIFILO:  Your Honor, we haven't

18  discussed a trial date in the state yet with Judge Carro.  What

19  we've been talking about is potentially having hearings in the

20  fall, suppression hearings, for example, but we have not talked

21  about that.

22          We understand that there was a handshake deal between

23  the prior administration and the Manhattan DA's Office that

24  their case would go first.  But now that the death penalty is

25  being sought here, we are going to make a request that that no

1   longer be the case and that this case proceed, your Honor, and

2   not the state court case.  So that's going to be our official

3   position.  We plan on writing on that and making more official

4   requests, but we just wanted to let your Honor know that that's

5   what our position is.

6           THE COURT:  That's very helpful.  Thank you.

7           I mean, I think I agree with Mr. Gentile that we

8   will -- barring some request otherwise, my intention is that we

9   will set a schedule for this case as if it's the only case.

10  And should an issue arise involving a conflict between the

11  scheduling that either party wants to bring to my attention,

12  you can certainly do that.  But I think in terms of our

13  management of this case, we ought to proceed as if it's the

14  only case until circumstances suggest otherwise.

15          MS. FRIEDMAN AGNIFILO:  Yes.  It's partly scheduling,

16  your Honor.  As you know, there's a lengthy mitigation process

17  that's going to occur in this particular case.  It's partly

18  scheduling, but it's also constitutional issues are going to be

19  impacted if we are forced to try that case first and then

20  before your Honor.  But we plan on briefing that for your

21  Honor, but I just wanted to let your Honor know that that's

22  coming down the pike.

23          THE COURT:  Okay.  And so the next scheduling issue

24  that I think we should address is I know that the defense filed

25  a motion before Judge Parker on April 11 related to the death

1   penalty issues in this case.  Of course events have overtaken

2   us in terms of what the posture of that motion was.

3        What I would propose is that now that Mr. Mangione has

4   been indicted and the government has filed its notice of intent

5   as of last evening, it seems to me that the best course is

6   either to deem the prior motion withdrawn without prejudice, or

7   if the defense prefers, I can deny the motion as moot without

8   prejudice to renewing those arguments and set a schedule that

9   allows you to brief in a single motion all the issues that you

10  want to raise regarding any actions of the government prior to

11  indictment and any issues raised by the notice of intent.

12       MS. FRIEDMAN AGNIFILO:  If your Honor is referring to

13  the motion that we filed before Judge Ramos, the Part One

14  judge?

15       THE COURT:  Right.  I think it initially went to Judge

16  Parker, then it got sent to Judge Ramos in his capacity as Part

17  One judge.  We're talking about the same motion.

18       MS. FRIEDMAN AGNIFILO:  Yes, your Honor.  We would

19  request an opportunity to renew that, set a motion schedule and

20  renew that because we're obviously in a different procedural

21  posture.

22       THE COURT:  Yes.  So I think in terms of just the

23  docket, I'll reflect that the motion's been denied as moot

24  without prejudice.

25       And how much time, Ms. Friedman Agnifilo, are you

1    requesting to file a unified motion that might renew whatever

2    arguments from the prior one you want to renew, as well as

3    anything raised by the notice of intent?

4              MS. FRIEDMAN AGNIFILO:  If we could have -- excuse me

5    one second.

6              (Counsel and defendant conferred)

7              MS. FRIEDMAN AGNIFILO:  Mr. Agnifilo is about to start

8    another trial, your Honor.

9              THE COURT:  Sure.  Take a minute to confer.

10             (Counsel and defendant conferred)

11             MS. FRIEDMAN AGNIFILO:  If we may have until the end

12   of June, we'd appreciate that.

13             THE COURT:  Sure.  That is consistent with what I had

14   in mind, approximately 60 days.  Why don't we say Friday,

15   June 27.

16             Mr. Gentile, how much time would the government like

17   to respond?

18             MR. GENTILE:  We request 45 days to respond, your

19   Honor.

20             And we would also request some clarification on the

21   relief that will be sought in this motion.  Is this just

22   regarding the death penalty?  Is this a motion to dismiss?  Is

23   there any other issues in this motion that we're speaking

24   about?

25             THE COURT:  So what I would like to do is to have the

1   motion that I'm anticipating is the renewal by the defense of

2   any arguments from their prior motion that they wish to renew

3   in terms of any pre-indictment conduct by the government, as

4   well as any issues that relate to the notice of intent — in

5   other words, arguments directly going to whether I should

6   preclude the government from seeking the possibility of capital

7   punishment as a punishment in this case.

8           Once we have that schedule set, I then would like to

9   set today a schedule for what I would view as sort of the

10  ordinary pretrial motions in a criminal case, any motions to

11  dismiss the indictment, any suppression motions, and we'll set

12  a schedule for that.  But for this motion, it really is only

13  the issues that relate specifically to whether the government

14  should be precluded in any way, for any reason from pursuing

15  capital punishment as a possible punishment in this case.

16          MR. GENTILE:  That would be helpful.  Thank you,

17  Judge.

18          THE COURT:  Okay.  All right.  So I'll set the

19  government's date to respond for Friday, August 8, and

20  August 22 for a reply.

21          And as I just said, I'd also like to, while we're here

22  and have a schedule for discovery, set a schedule for the sort

23  of ordinary pretrial motions in a criminal case, any motions to

24  dismiss counts of the indictment, as well as any suppression

25  motions.  And so bearing in mind that these things are going to

P4PJMANA

1    be proceeding somewhat on two tracks, I would propose to the

2    defense sometime in late July or August for those motions.  I

3    see Mr. Moskowitz is maybe not happy with that.

4           Assuming that you have received all of the discovery

5    by the end of May as I've directed the government to provide if

6    that's at all possible, how much time do you presently think

7    that you all would like to review that discovery and consider

8    what pretrial motions you might have?

9           (Counsel and defendant conferred)

10           MS. FRIEDMAN AGNIFILO:  If it's okay with your Honor,

11    if we could have until the end of September since there's

12    approximately three terabytes worth of data that is going to be

13    produced.  We're just getting started going through all of

14    that.  We'd appreciate that time.

15           THE COURT:  I think that that's reasonable given the

16    volume of the discovery and the other issues in this case.

17    I'll set September 26 for now, Friday, September 26, as a date

18    by which the defense will make any motions against the

19    indictment or related to suppression.  And the government's

20    response on October 31, reply November 14.  Okay.

21           I'd like to set then a next conference date which will

22    address the pretrial motions, set a hearing date if we need to

23    for suppression.  Why don't we set that for Friday, December 5

24    at 11:00 a.m.  My goal will be to set a trial date at that

25    conference.  So all counsel should come prepared on December 5

P4PJMANA

with their calendars, with any expected requests that you might

have, if necessary at that time, Ms. Agnifilo, regarding any

additional time you feel you need for mitigation investigation.

But my goal will be to leave that December 5

conference with a firm trial date set for 2026.  Okay.  And of

course if anyone thinks there's a need for a conference before

then because of issues related to the state case, because of

issues that arise in this case, just don't hesitate to reach

out, to send me a letter or reach out directly to Ms. Verneus

to request a conference, and we'll set that at a mutually

convenient time.

And likewise, the September -- the fall dates for the

motion practice are only outside dates.  Sometimes it will

happen that early resolution of a particular issue would be

helpful to counsel, so if you want to file something before

then, don't feel you have to wait.  But we'll expect those

motions in the fall.

Okay.  The last thing before we turn to the speedy

trial clock and any other issues that counsel might like to

raise is that given the nature of this case, I would like to

just remind all counsel of the strictures of Local Criminal

Rule 23.1 about public commentary about this matter that could

impede or affect Mr. Mangione's ability to get a fair trial and

the Court's ability to select a fair jury in this case.

I'm specifically directing the government to convey my

1   directive to Mr. Clayton and request that he convey the same to

2   Attorney General Bondi and any of her subordinates at Main

3   Justice.

4          Ms. Friedman Agnifilo, anything else you'd like to

5   raise before we talk about the speedy trial clock?

6          MS. FRIEDMAN AGNIFILO:  I do want to make one record,

7   if that's okay with you, your Honor, regarding this

8   unprecedented dual prosecution, simultaneous dual prosecution

9   of Mr. Mangione for the exact same offense.  It's created

10  numerous logistical and constitutional issues for us that, as I

11  said, we'll be addressing in future motions to you, but there

12  is one thing I'd like to put on the record.

13         We were just informed by the state court prosecutors

14  that they were eavesdropping on all of Mr. Mangione's calls.

15  They were listening to his attorney calls and his other calls

16  that are going on, and they said that it was inadvertent that

17  they listened to a call between Mr. Mangione and me, who I am

18  the lead counsel of record.  And they know that, and obviously

19  the United States knows that as well.

20         And they said that these calls were given to them by

21  the Southern District and they're being recorded at MDC.  So we

22  just want to make sure that something is put in place, your

23  Honor, that does not -- they said that they didn't -- that only

24  one person listened to it.  They took steps to minimize any

25  encroachment into the attorney-client relationship and no one

P4PJMANA

1    discussed with the one person who did listen, and that it was

2    inadvertent.

3            But we would just ask that the Southern District put

4    something in place to ensure that no calls to his legal team

5    and among the legal team are either recorded or listened to,

6    certainly not provided to the Manhattan DA's Office or the U.S.

7    Attorney's Office.

8            THE COURT:  Mr. Gentile, what can you tell me about

9    this situation?

10           MR. GENTILE:  Your Honor, this is the very first we've

11   heard of this situation.  Of course that's not the normal

12   practice for the U.S. Attorney's Office or any office.  All

13   jail calls are recorded, as the Court knows, but we do not pull

14   attorney-client calls.  We will look into it, and we will make

15   sure we rectify it, your Honor.

16           THE COURT:  Okay.  I mean, recognizing that you've

17   just heard of this situation, I'd like a letter from the

18   government within seven days of today — Friday, May 2, I

19   believe — just updating the Court on, first, that Mr. Mangione

20   is being afforded appropriate access to a line that is reserved

21   for attorney calls.  My understanding is the MDC still has such

22   a line; is that correct?

23           MR. GENTILE:  I'm not -- I can't answer that, your

24   Honor.

25           THE COURT:  So I would like to know what are the

P4PJMANA

1  arrangements for Mr. Mangione to be able to speak to his

2  attorneys without -- I know those calls are typically recorded

3  by the Bureau of Prisons, but to ensure that he has access to a

4  line that is segregated from any calls that go to the

5  government, and to the extent there has been inadvertent

6  production, what the U.S. Attorney's Office is doing to ensure

7  that those calls have been segregated and aren't accessible to

8  any member of the prosecution team.

9          MR. GENTILE:  Certainly, Judge.

10          THE COURT:  Okay.  Mr. Gentile, anything else the

11  government would like to raise before we talk about the speedy

12  trial clock?

13          MS. FRIEDMAN AGNIFILO:  No, your Honor.

14          MR. GENTILE:  No, your Honor.

15          Just briefly, with respect to Rule 16 discovery, we

16  anticipate producing that discovery pursuant to a protective

17  order.  We conferred briefly with defense counsel prior to your

18  Honor taking the bench.  We will meet and confer about the

19  terms of that protective order, but we just wanted to let the

20  Court know that a protective order will be forthcoming.

21          THE COURT:  Okay.  And obviously if you reach an

22  impasse on the terms of that and you need my involvement, just

23  let me know and we can arrange a conference if necessary.

24          MR. GENTILE:  Certainly, Judge.

25          With respect to the Speedy Trial Act, the government

P4PJMANA

1   moves to exclude the time between now and December 5 of 2025

2   from the provisions of the Speedy Trial Act to allow the

3   government time to produce discovery, allow defense counsel

4   time to review that discovery, and make whatever motions it

5   deems appropriate.

6          MS. FRIEDMAN AGNIFILO:  We agree, your Honor.

7          THE COURT:  Okay.  I'll just note that the indictment

8   was returned on April 17.  Recognizing the government's

9   position that time doesn't begin to run until arraignment, I'm

10  not sure that I agree with that position as a legal matter, but

11  in any event, at most seven days have elapsed on the speedy

12  trial clock.  However, I will exclude the time from today until

13  December 5 of 2025.

14         I find that the ends of justice served by excluding

15  that time outweigh the interests of the public and the

16  defendant in a speedy trial because the time is needed for the

17  government to complete its production of discovery, for the

18  defendant and its lawyers to review that discovery, for the

19  filing of motions specifically related to the seeking of

20  capital punishment as well as motions related to the indictment

21  and any Fourth Amendment or Fifth Amendment suppression issues,

22  and, in addition, for all counsel to continue to discuss the

23  appropriate schedule and progress of this case.

24         Okay.  Anything further, Mr. Gentile?

25         MR. GENTILE:  Not from the government, Judge.  Thank

P4PJMANA

1  you.

2          THE COURT:  Ms. Friedman Agnifilo?

3          MS. FRIEDMAN AGNIFILO:  No, your Honor.  Thank you

4  very much.

5          THE COURT:  Okay.  The defendant will remain in

6  custody, and I will see you all on December 5.

7          We're adjourned.

8          (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25