UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>LUIGI NICHOLAS MANGIONE,<br>                                   Defendant. | 25 Cr. 176 (MMG)<br><br>**NOTICE OF MOTION** |

PLEASE TAKE NOTICE THAT upon the annexed Memorandum of Law, the undersigned will move the Court, on a date convenient to the Court, for an Order directing the government to provide an informational outline concerning certain of the purported aggravating factors set forth in the Notice of Intent to Seek the Death Penalty, ECF Doc. No. 25 herein.

Dated: July 25, 2025
       New York, New York

                                            MOSKOWITZ COLSON
                                            GINSBERG & SCHULMAN, LLP

                                            By: *avraham moskowitz*
                                            Avraham C. Moskowitz
                                            Eylan Schulman
                                            Christopher R. Neff

                                            AGNIFILO INTRATER LLP
                                            Karen Friedman Agnifilo
                                            Marc Agnifilo
                                            Jacob Kaplan
                                            *Attorneys for Luigi Mangione*

TO:   Clerk of Court, *by ECF*
      All Counsel of Record, *by ECF*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**UNITED STATES**

        -against-                                        25 Cr. 176 (MMG)

**LUIGI MANGIONE**
-------------------------------------------------------x

## MOTION FOR INFORMATIONAL OUTLINE
## OF CERTAIN AGGRAVATING FACTORS

**I. Introduction**

Defendant, Luigi Mangione, through undersigned counsel, and pursuant to the Fifth, Sixth and Eighth Amendments to the Constitution of the United States and the Federal Death Penalty Act ("FDPA"), hereby moves the Court to direct the government to provide him with an informational outline concerning the statutory and non-statutory aggravating factors that it intends to prove at a capital-sentencing phase of his trial to support a death sentence.

At such a sentencing phase, aggravating factors will play a role similar to offense elements at a guilt-innocence trial. But here, for most of the aggravators, including the critical ones involving the alleged creation of a grave risk of death to one or more persons other than the victim, the crime's effects on the deceased's family, friends and co-workers, and the alleged future dangerousness of Mr. Mangione, the indictment and the government's death-penalty notice contain only barebones, vague allegations, lacking any information about the facts upon which the government intends to rely. This paucity of detail prevents Mr. Mangione from preparing to defend against these aggravating factors at a sentencing phase. It also prevents the Court from carrying out its critical pretrial duty to act as a gatekeeper against invalid factors and inadmissible evidence. As most other district courts—including several in this Circuit—have recognized, an appropriate way to avoid

1

these problems is for the government to provide an informational outline of the essential facts underlying its alleged aggravating factors. Such an outline functions much like a bill of particulars does for a guilt-innocence trial when the indictment is similarly conclusory.

An informational outline should be provided within 90 days, no later than October 24, 2025. By that date, the government will have had more than ten months to investigate and prepare its case and surely will be able share with the Court and the defense the essential facts underlying its aggravating factors. And there is clear precedent from other district courts for such a deadline. *See*, *e.g.*, *United States v. Gendron*, No. 22-CR-109-LJV, 2024 WL 3647779, at *6 (W.D.N.Y. Aug. 2, 2024) (requiring production of informational outline by September 3, 2024, one month after entry of order). Moreover, since the Court has expressed its intention to try this case in 2026, any further delay in providing the informational outline would interfere with the defense's ability to complete the time-consuming process of investigating and preparing to confront and rebut those factual allegations.

The need for sufficient time to conduct such an investigation is particularly acute in this case because the government announced its intention to seek the death penalty even before the defense had an opportunity to conduct a mitigation investigation and make a detailed factual mitigation presentation to the Department of Justice.

## II. **Factual Background**

If this case reaches a capital-sentencing phase, the government will seek to persuade the jury that Luigi Mangione should be executed for shooting and killing Brian Thompson, the Chief Executive Officer of United Health Care, in the vicinity of West 54th Street and Sixth Avenue in Manhattan, on December 4, 2024.

Mr. Mangione was arrested by the police in Altoona, Pennsylvania on December 9, 2025, and was indicted by a grand jury in New York County on December 17, 2024 on eleven charges, including first- and second-degree murder. On December 19, 2024, following his waiver of extradition and return to New York, Mr. Mangione was arrested by federal authorities and presented before a Magistrate Judge in this district on a criminal complaint charging him, *inter alia*, with two counts of Interstate Stalking and one count of Murder Through the Use of a Firearm, in violation of 18 U.S.C. §924(j).

On April 1, 2025, Attorney General Pam Bondi directed the U.S. Attorney for the Southern District of New York to seek the death penalty against Mr. Mangione. A capital indictment was returned against Mr. Mangione on April 17, 2025. The Government filed its Notice of Intent to Seek the Death Penalty on April 24, 2025, alleging two statutory aggravating factors, *i.e.*, "substantial planning and premeditation" and "grave risk of death to additional persons" and three non-statutory aggravating factors, *i.e.*, "victim impact," "selection of site for an act of violence" and "future dangerousness." Both the indictment and the Notice of Intent are bare-boned and do not provide details regarding the facts the Government intends to prove at a penalty phase with respect to the charged aggravating factors.

The allegations in the Notice of Intent filed in this case are generalized and unbounded, leaving the defense blind as to what acts, events, harms—in short, what facts—the government intends to prove. The most glaring examples are the aggravators likely to spawn the most extensive litigation over their validity, scope, and admissibility and to consume much of the government's sentencing presentation if permitted: the statutory aggravating factor of "Grave Risk of Death to Additional Persons" and the non-statutory factors of "Victim Impact" and "Future Dangerousness." For the first of those factors, the grave risk of death to additional persons, the Notice does not

3

identify what other people were put in grave risk of death, nor does it provide any details as to what conduct by the defendant allegedly placed such individuals at a grave risk of death. The Notice is equally silent with respect to the facts the Government intends to prove regarding the impact that Mr. Thompson's death has had on his family, friends and coworkers, saying only that the government will prove the victim's "personal characteristics" and "the impact of the victim's death upon his family, friends and co-workers." The Notice does not specify what personal characteristics the Government intends to prove, which family members, friends and co-workers were impacted by his death, or how they were impacted.

    Finally, with respect to the non-statutory aggravating factor of future dangerousness, the Notice simply alleges that Mr. Mangione "expressed intent to target an entire industry and rally political and social opposition to that industry by engaging in an act of lethal violence." It further alleges that he sought to evade capture by law enforcement and travelled across state lines with a privately manufactured gun and silencer. The Notice does not provide any detail as to when and how he expressed an intent to target an entire industry, or in what way he intended to target the industry, other than by rallying political and social opposition to that industry, or how any potential political and social opposition to the industry posed a risk of future dangerousness. The Notice certainly does not contain any factual statement as to how the Government intends to prove that Mr. Mangione is a future danger to anyone.

    At the initial arraignment and pretrial conference held on April 25, 2025, the Court stated that it intends to set a firm trial date in 2026 at the next scheduled conference, on December 5, 2025, (Tr. at p. 17). A 2026 trial date would require that this case move exceptionally quickly, especially

considering that capital cases, on average, do not proceed to trial until at least 42 months after indictment.[1]

## Argument

**A.  Luigi Mangione is entitled to meaningful advance notice of the theories and facts the government intends to prove at a capital-sentencing phase to establish its aggravating factors.**

The sentencing phase of a capital trial parallels an ordinary criminal trial in certain respects, with aggravating factors functioning much like elements of the offense: The government must prove each aggravating factor beyond a reasonable doubt; jurors may not consider an aggravating factor unless they unanimously find it so proved; and their ultimate verdict turns on their findings of such factors – along with the defendant's mitigating factors, which are analogous to affirmative defenses. *See* 18 U.S.C. § 3593(c)-(e); *United States v. Fell*, 360 F.3d 135, 142 (2d Cir. 2004).

Like every defendant, Luigi Mangione is entitled to meaningful notice of what the government intends to prove, so that he can prepare and present a defense, including any legal or evidentiary challenges. Thus, in an ordinary criminal prosecution, a bill of particulars is required when the indictment charges are phrased in general terms so that they "do not advise the defendant of the specific acts" the government will seek to prove. *United States v. Chen*, 378 F.3d 151, 162-63 (2d Cir. 2004); *see* Fed. R. Crim. P. 7(c)(1) (indictment must include a "definite written statement of the essential facts constituting the offense charged"); Fed. R. Crim. P. 7(f) (authorizing court to "direct the government to file a bill of particulars" to supplement the indictment, "as justice requires"); *see also United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988) (purpose of bill of particulars is "to prevent surprise"). A bill of particulars is particularly appropriate when the

---

[1] *See*, Declaration of Matthew Rubenstein, Capital Resource Counsel and member of the Federal Capital Trial Project, dated July 22, 2025, attached as Exhibit A hereto.

potential acts covered by the charges are broad in scope or wide-ranging. *United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987); *United States v. Clarkson Auto Elec., Inc.*, 2014 WL 3906324, at **3-4 (W.D.N.Y. Aug. 8, 2014).

At a capital-sentencing phase, with Mr. Mangione's life at stake, the right to meaningful notice of the government's aggravating factors enjoys heightened, due-process protection. *See Lankford v. Idaho*, 500 U.S. 110, 123-25 (1991); *Gardner v. Florida*, 430 U.S. 349, 358-59 (1977). The FDPA permits the jury to consider only aggravating factors "for which notice has been given" by the government. 18 U.S.C. § 3592(c). While the statute does not specify the kind or extent of the notice required, as another district court in this Circuit recognized, "at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and prepare his case in rebuttal." *United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006); *United States v. Duncan*, 2008 WL 656036, at *5 (D. Idaho Mar. 6, 2008) (same); *United States v. Kaczynski*, 1997 WL 34626785, at *18 (E.D. Cal. Nov. 7, 1997) (same). Otherwise, it "raises the specter of unfair surprise and potentially prejudices Defendant's ability to defend against the government's efforts to impose the death penalty." *United States v. Rodriguez*, 380 F. Supp. 2d 1041, 1057 (D.N.D. 2005).

"In any capital case, the government must give the defendant notice of all aggravating factors sufficient to enable the defendant to respond and prepare his case for sentencing." *United States v. Gendron*, 2024 WL 3647779, at *2. That means, at minimum, the government "must inform the defendant[] of the theories and facts that the government will use to establish each aggravating factor" in the case. *Id.*(quoting *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001)). *See also United States v. Burkhalter*, 2021 WL 3519281, at **9-10 (W.D. Mo. Aug. 10, 2021) (same) *United States v. Lujan*, 2008 WL 11359151, at **23-24 (D.N.M. June 26, 2008)

(same); *Duncan*, 2008 WL 656036, at *5 (same); *United States v. Diaz*, 2007 WL 196752, at *2-3 (N.D. Cal. Jan. 23, 2007) (same).

Requiring the government to disclose such theories and facts also enables this Court to carry out its essential gatekeeping function at a capital-sentencing phase. *United States v. Gendron*, 2024 WL 3647779, at *2 ("An informational outline also assists the court in fulfilling its role as an evidentiary gatekeeper."); *See* 18 U.S.C. 3593(c). "The screening of aggravating factors is essential in channeling, directing, and limiting the sentencer's discretion to prevent arbitrary and capricious imposition of the death penalty." *Id.* (cleaned up). By mandating advance notice, the Court can ensure that it has the information necessary to consider the critical, complex defense motions that will follow, and make reasoned, deliberate choices in conducting its Constitutionally mandated screening of "aggravating factors ... in order to prevent arbitrary and capricious imposition of the death penalty." *United States v. Hammer*, 2011 WL 6020157, at *3 (M.D. Pa. Dec. 1, 2011); *see also, e.g., United States v. Basciano*, 763 F. Supp. 2d 303, 357 n.40 (E.D.N.Y. 2011); *United States v. Karake*, 370 F. Supp. 2d 275, 280-81 (D.D.C. 2005) (requiring government to notice further "specifics" for aggravating factors also "provide[s] the court with some frame of reference for ruling on objections to the death penalty notice"). In the absence of an informational outline, Mr. Mangione will not be in a position to present those challenges because his only notice of the aggravators will be the barebones allegations in the government's death-penalty Notice.

Even comprehensive discovery about aggravating factors cannot substitute for such notice of the government's anticipated presentation, especially where, as here, the discovery is voluminous. As one court has explained,

> [T]he fact that the precise acts and/or events may have been disclosed in the course of discovery does not obviate the need for a more specific notice. Even if the government has provided Defendant with documents detailing specific acts, the government has not yet indicated

> which acts and/or events it intends to use at sentencing. In fact, the characterization of the discovery provided as extensive lends further support for requiring the government to identify the particular acts upon which it will rely. Extensive discovery could make it difficult for Defendant to ascertain which precise discovery will be used against him.

*Rodriguez*, 380 F. Supp. 2d at 1057–58; *see Kaczynski*, 1997 WL 34626785, at *19 (same); *Diaz*, 2007 WL 4169973, at *5 ("Merely referring to a range of several hundred pages (or thousands in some cases) in discovery is not an informative outline . . . [T]oo much is left to guesswork. Notice means notice. It does not mean a scavenger hunt for clues in discovery, including in redacted pages").

### B. As in other cases, the government should be directed to provide an informational outline of its aggravating factors, particularly its sketchy allegations for "Grave Risk of Death to Additional Persons," "Victim Impact" and "Future Dangerousness"

Based on these due process considerations, the FDPA's notice requirement, and inherent judicial authority, most district courts have agreed to order the government to produce, in advance, an informational outline of what specifically it intends to prove at a capital-sentencing hearing, for at least certain aggravating factors. That appears to include every district court in this circuit to address the issue. *See, e.g., United States v. Gendron*, 2024 WL 3647779 (W.D.N.Y. Aug. 2, 2024); *United States v. Saipov*, No. 1:17-cr-722, ECF No. 482 (S.D.N.Y. Aug. 11, 2022); *Basciano*, 763 F. Supp. 2d at 357; *United States v. Jacques*, 2011 WL 1675417, at **1, 29 (D. Vt. May 4, 2011), *overruled in part on other grounds*, 684 F.3d 324 (2d Cir. 2012); *Wilson*, 493 F. Supp. 2d 364, 377-78; *United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001); *United States v. Walker*, 910 F. Supp. 837, 855-856 (N.D.N.Y. 1995).

It also includes numerous district courts in other circuits across the country.[2] *See, e.g., Burkhalter*, 2021 WL 3519281, at *9; *United States v. Lujan*, 530 F. Supp. 2d 1224, 1269-70 (D.N.M. 2008); *Rodriguez*, 380 F. Supp. 2d at 1057-58; *Karake*, 370 F. Supp. 2d at 280-81; *Llera Plaza*, 179 F. Supp.2d at 472; *United States v. Glover*, 43 F. Supp.2d 1217, 1222 (D. Kan. 1999); *United States v. Savage*, 2013 WL 1934531, at **11, 21 (E.D. Pa. May 10, 2013); *Hammer*, 2011 WL 6020157, at **2-4; *Duncan*, 2008 WL 656036, at *5; *United States v. O'Reilly*, 2007 WL 4591856, at *5 (E.D. Mich. Dec. 28, 2007); *Diaz*, 2007 WL 4169973, at *3; *United States v. Gooch*, 2006 WL 3780781, at *23 (D.D.C. Dec. 20, 2006); *Kaczynski*, 1997 WL 34626785, at *19.

As discussed in greater detail below, at least three of the five aggravating factors in the government's death-penalty notice—"Grave Risk of Death to Additional Persons" "Victim Impact" and "Future Dangerousness"—require an informational outline in order to provide the defense with adequate notice of the theories and facts the government intends to prove.

### 1. "Grave Risk of Death to Additional Persons"

The government's death-penalty Notice alleges that "in the commission of the offense" Luigi Mangione "knowingly created a grave risk of death to one or more persons in addition to the victim of the offense." ECF No. 25 at 2. This simply repeats the language of the aggravating factor listed in the FDPA. 18 U.S.C. § 3592(c)(5). It provides no notice of which "persons" are covered. Nor does the aggravating factor, as alleged, identify which act or acts by Mr. Mangione knowingly created a grave risk to such individuals. Indeed, given that the shooting of Mr. Thompson was done at close

---

[2] Some courts outside this circuit have held that a defendant is not entitled to advance notice of the *specific evidence* to be used to establish the government's aggravating facts and theories. *See, e.g.*, *United States v. LeCroy*, 441 F.3d 914, 929-930 (11th Cir. 2006); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). The Second Circuit has not addressed that issue.

9

range and early in the morning, when the street was nearly empty, it is hard to imagine, without further specificity, how the Government intends to prove this aggravating factor.

Accordingly, the Court should follow the lead of other district courts and order the government's informational outline to include more specific notice for this aggravating factor. *See, e.g., United States v. Gendron*, 2024 WL 3647779, at *4 (ordering the government to provide an informational outline detailing (1) the identity of the people towards whom defendant allegedly knowingly created a grave risk of death, and (2) the acts through which defendant knowingly created that grave risk of death); *Llera Plaza*, 179 F. Supp. 2d at 473 (ordering production of informative outline where "neither the indictment nor the NOIs specify which 'additional persons' the defendants are alleged to have put at risk during their alleged crimes"); *Savage*, 2013 WL 1934531, at *12 ("Nowhere in the Revised Notice of Intent or in the Indictment does the Government allege any individuals, other than the victims, who were exposed to 'grave risk' during the commission of the charged murders. The Government shall submit an outline of the evidence it intends to use at the sentencing phase with respect to this aggravating factor."); *Diaz*, 2007 WL 196752, at *4 (ordering informative outline because "[t]he government did not explain in its briefs or at oral argument who was put at grave risk, what the grave risk was, or how the defendant 'knowingly' created the risk").

### 2. "Substantial Planning and Premeditation"

The government's death-penalty notice alleges that Luigi Mangione "committed the offense after substantial planning and premeditation to cause the death of a person." ECF No. 25 at p.2. Again, this simply repeats the language of the aggravating factor listed in the FDPA. 18 U.S.C. § 3592(c)(9). The notice is devoid of any of the facts the government intends to prove to establish such planning and premeditation, including, most importantly, what acts by Mr. Mangione constituted the

planning, when and where those acts occurred, and which person's death was planned and premeditated.

Again, in similar circumstances, other courts have ordered the government to furnish an informational outline setting forth at least the factual basis for this aggravator. *See, e.g.*, *United States v. Gendron*, 2024 WL 3647779, at *4 (requiring government to "identify the factual basis for this factor, including which acts constituted planning and where and when those acts took place"); *United States v. Schlesinger*, 2021 WL 5578901, at *3 (D. Ariz. Nov. 30, 2021) (requiring disclosure of "specific acts"); *United States v. Con-Ui*, 2016 WL 9331115, at *18 (M.D. Pa. Jan. 28, 2016) (requiring disclosure of witnesses and evidence); *United States v. Ciancia*, 2015 WL 13798674, at *4 (C.D. Cal. Sept. 4, 2015) ("factual basis"); *Hammer*, 2007 WL 6020157, at *3 (requiring disclosure of information government plans to present); *Diaz*, 2007 WL 196752, at *4 (requiring disclosure of "factual basis"); *Glover*, 43 F. Supp. 2d at 1221-22 (directing "factual amplification" by government).

### 3. "Victim Impact"

In its death penalty Notice, the government alleges a broad ranging "non-statutory" aggravating factor, "Victim Impact," involving the life of the victim and the crime's effects on his family, friends and co-workers. For this, the Notice says only that the government will prove the "injury, harm, and loss caused" by Luigi Mangione to "the family, friends and co-workers of Brian Thompson" as "evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family, friends and co-workers." ECF No. 25 at 3. The Notice is silent on what characteristics of Mr. Thompson the Government intends to prove, which family members, friends and co-workers were impacted by his loss, and the nature of the impact suffered by each relative, friend or co-worker the Government intends to rely on.

planning, when and where those acts occurred, and which person's death was planned and premeditated.

Again, in similar circumstances, other courts have ordered the government to furnish an informational outline setting forth at least the factual basis for this aggravator. *See, e.g.*, *United States v. Gendron*, 2024 WL 3647779, at *4 (requiring government to "identify the factual basis for this factor, including which acts constituted planning and where and when those acts took place"); *United States v. Schlesinger*, 2021 WL 5578901, at *3 (D. Ariz. Nov. 30, 2021) (requiring disclosure of "specific acts"); *United States v. Con-Ui*, 2016 WL 9331115, at *18 (M.D. Pa. Jan. 28, 2016) (requiring disclosure of witnesses and evidence); *United States v. Ciancia*, 2015 WL 13798674, at *4 (C.D. Cal. Sept. 4, 2015) ("factual basis"); *Hammer*, 2007 WL 6020157, at *3 (requiring disclosure of information government plans to present); *Diaz*, 2007 WL 196752, at *4 (requiring disclosure of "factual basis"); *Glover*, 43 F. Supp. 2d at 1221-22 (directing "factual amplification" by government).

### 3. "Victim Impact"

In its death penalty Notice, the government alleges a broad ranging "non-statutory" aggravating factor, "Victim Impact," involving the life of the victim and the crime's effects on his family, friends and co-workers. For this, the Notice says only that the government will prove the "injury, harm, and loss caused" by Luigi Mangione to "the family, friends and co-workers of Brian Thompson" as "evidenced by the victim's personal characteristics and by the impact of the victim's death upon his family, friends and co-workers." ECF No. 25 at 3. The Notice is silent on what characteristics of Mr. Thompson the Government intends to prove, which family members, friends and co-workers were impacted by his loss, and the nature of the impact suffered by each relative, friend or co-worker the Government intends to rely on.

As other district courts, including in this Circuit, have recognized: "That the range of human suffering—whether physical, emotional, or economic—is vast goes without saying." *Bin Laden*, 126 F. Supp. 2d at 304; *see Wilson*, 493 F. Supp. 2d at 378 ("The category of 'victim impact' is vast."); *Green*, 2008 WL 4000870, at *21 (same). Thus, an "oblique reference to victims' 'injury, harm, and loss,' without more, does nothing to guide [the defendant's] vital task of preparing for the penalty phase of trial." *Bin Laden*, 126 F. Supp. 2d at 304. It also hamstrings this Court's performance of its gatekeeping role in this especially fraught and sensitive area of the case. As the district judge who handled the first mass-killing case tried under the FDPA observed: "This is the most problematical of all of the aggravating factors and may present the greatest difficulty in determining the nature and scope of the 'information' to be considered." *United States v. McVeigh*, 944 F. Supp. 1478, 1491 (D. Colo. 1996).

"The propriety of providing a defendant with such information is further underscored by the particular danger of eliciting an emotional reaction inherent in victim impact evidence." *United States v. Casey*, 2013 WL 12190487, at *2 (D.P.R. Mar. 1, 2013); *O'Driscoll*, 203 F. Supp. 2d at 340 (M.D. Pa. 2002) ("The presentation of victim impact evidence can be problematic because of the potential for emotional outbursts during the testimony").[3]

Limitations on such testimony obviously need to be hammered out well in advance of trial by the parties and the Court, rather than on the fly as witnesses are about to be sworn in, or, worse, while they are on the stand. *See, e.g., United States v. Johnson*, 713 F. Supp. 2d 595, 625 (E.D. La. 2010) (during sidebar discussion of defense objection, victim's overwrought wife remained on stand

---

[3] Victim impact testimony has "unsurpassed emotional power . . . on a jury." *United States v. Johnson*, 362 F. Supp. 2d 1043, 1107 (N.D. Iowa 2005). The federal judge in that case described it as "the most forceful, emotionally powerful, and emotionally draining evidence that [he has] heard in any kind of proceeding in any case, civil or criminal, in [his] entire career as a practicing trial attorney and federal judge spanning nearly 30 years." *Id.*

and "continue[d] to cry within feet" of jurors, leaving them "totally vested in her plight" and "feel[ing] her misery unattended by counsel and the Court").

Thus, faced with similarly conclusory notices for victim impact, courts in other cases have ordered the government to "more specifically articulate the nature of this aggravator." *Glover*, 43 F. Supp. 2d at 1225. One court directed the government to specify "which members of the [victim's] family have suffered, the nature of their suffering, and the nature of the 'permanent harm,'" for example, "whether members of the family sought counseling or other medical treatment, such as hospitalization." *Id.* Other courts have entered similar orders. *See, e.g., United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) ("[T]he government shall amend its notice of intent . . . to include more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove."); *Burkhalter*, 2021 WL 3519281, at *9 (ordering government to "provide an informational outline regarding victim impact evidence"); *United States v. Pleau*, 2013 WL 1673109, at *4 (D.R.I. Apr. 17, 2013) (same); *United States v. Talik*, 2007 WL 4570704, at *9 (N.D.W. Va. Dec. 26, 2007) (same); *Llera Plaza*, 179 F. Supp. 2d at 475 (same); *Duncan*, 2008 WL 656036, at *8 (same); *Green*, 2008 WL 4000870, at *20 (same); *O'Reilly*, 2007 WL 4591856, at *5 (same); *United States v. Williams*, 2013 WL 1335599, at *40 (M.D. Pa. Mar. 29, 2013) (same).  Most recently, the *Gendron* court, finding that "an informational outline is necessary to give ... notice of the extent and scope of the injuries and loss that the government alleges," ordered the government to "provide an outline with the personal characteristics it intends to prove as to each victim; the identities of the people whom it intends to prove were affected, and the type and scope of the loss, injury, and harm suffered." *United States v. Gendron*, 2024 WL 3647779, at *4.

13

This Court, like others, should therefore "order the Government to outline the type and scope of the 'loss, injury, and harm' suffered by each victim, his or her family members, and other individuals as relevant, and the 'personal characteristics' of each victim that it intends to prove." *Gooch*, 2006 WL 3780781, at *23; *see, e.g., Schlesinger*, 2021 WL 5578901, at *3 (requiring government to provide "a list of the personal characteristics of the victims that the Government intends to prove" and "particularized categories of injury, harm, and loss"); *Con-Ui*, 2016 WL 9331115, at *19 (ordering informational outline on victim impact aggravator specifying list of personal characteristics of victim, whether any testimony will be introduced from persons not named in the NOI, particularized categories of harm and loss that government intends to present, and any other pertinent information defendant would need to adequately prepare to respond.); *Savage*, 2013 WL 1934531, at *19 (ordering government to provide either actual "victim impact statements" or "an outline of the specific evidence about which [each] victim will testify."); *Pleau*, 2013 WL 1673109, at **4, 6 ("the Court hereby orders the government to provide an outline of its victim impact evidence").

### 4. "Future Dangerousness"

The final non-statutory aggravator crafted by the government for its death penalty Notice is "Future Dangerousness." The Notice is vague and unspecific about this, saying only that Luigi Mangione presents a future danger because he "expressed intent to target an entire industry, and rally political and social opposition to that industry, by engaging in an act of lethal violence; and he took steps to evade law enforcement, flee New York City immediately after the murder, and cross state lines while armed with a privately manufactured firearm and silencer." ECF No.25 at 3. The Notice does not explain in what way Mr. Mangione intended "to target an entire industry." Does the Government intend to prove that he intended to kill others in the healthcare industry, or does it

14

contend, as suggested by the phrase "and rally political and social opposition to that industry" that he was hoping to spark a political and social movement to change the healthcare industry? If the Government intends to prove that Mr. Mangione intended to kill others in the healthcare industry, who were the intended victims and what proof is there of such intent? If Mr. Mangione only intended to rally political and social opposition to the healthcare industry, in what way does that make him a future danger to anyone?

As for the allegations that Mr. Mangione attempted to evade law enforcement and fled New York City carrying a "privately manufactured firearm and silencer," what relevance does that have to proving "future dangerousness?" Does the Government contend that any alleged murderer who flees the scene of the crime with the alleged murder weapon presents a "future danger" that warrants imposition of the death penalty? If not, then what facts make Mr. Mangione's alleged flight unique, such that he presents a "future danger" so great that he deserves the death penalty? In that regard, it is worth noting that Mr. Mangione was apprehended in a restaurant in Altoona, Pennsylvania without incident, not exactly indicative of someone who presents a future danger to others. Unless the Government details the facts that it intends to rely on to prove the "future dangerousness" aggravator, the defense will be unable to prepare to rebut the Government's claim at trial, or even to raise legal arguments before trial against the evidence the Government intends to rely on. Because the "future dangerousness" aggravator is so amorphous and the type of evidence the Government can rely on to attempt to prove it is so broad, numerous courts have required the Government to provide an informational outline detailing the evidence it intends to use to prove this aggravating factor. See, e.g., *U.S. v. Fell,* 2017 WL 10809983 (D. Vt. Jan. 20, 2017); *United States v. Con-Ui*, 2016 WL 9331115 (M.D. Pa. Jan. 28, 2016); *United States v. Schlesinger*, 2021 WL 5578901 (D. Ariz. Nov. 30, 2021).

15

### C. The government should be directed to provide an informational outline within 90 days.

Because an informational outline is essential to enabling the defendant to prepare to meet the government's aggravation case at the sentencing phase and the Court to carry out its gatekeeping duties, a number of district courts have ordered such an outline to be provided well before trial begins. *See, e.g., United States v. Gendron*, 2024 WL 3647779, at *6 (informational outline to be provided in approximately one month after the Order and approximately one year before jury selection); *Burkhalter*, No. 18-36, letter from government to defense (W.D. Mo. Oct. 13, 2021) (ordered informational outline provided by government while no trial date pending; trial subsequently scheduled for two years later, in 2023); *United States v. Schlesinger*, No. CR-18-2719, ECF No. 432 (D. Ariz. June 3, 2022) (outline due July 28, 2022, in anticipation of trial date six months later, in January 2023; *see* ECF No. 220); *United States v. Duran-Gomez*, No. H-10-459, ECF No. 529 (S.D. Tex. Feb. 24, 2020) (government provided ordered outline while no trial date pending; trial subsequently scheduled for two years later, in 2022); *Con-Ui*, 2016 WL 9331115, *1 (government provided ordered outline on February 25, 2016, in anticipation of trial date seven months later, in September 2016, *see* ECF No. 864 at 3, ECF No. 922, at 11); *Pleau*, 2013 WL 1673109, at **4, 6 (government ordered to produce outlines of victim-impact and other aggravators by August 5, 2013, in anticipation of trial date four months later, December 1, 2013); *Lujan*, 530 F. Supp. 2d at 1271-72 (government ordered to produce outline "within reasonable time" and revised outline by March 24, 2011 for trial date three months after that, in June 2011).

Requiring production of an informational outline within 90 days would in no way be burdensome or prejudicial to the government. Presumably it already has the information necessary for such an outline in its possession, because due process requires that such information be presented to the grand jury. Moreover, the memorandum the government submitted to the Capital Case

16

Committee in accordance with the Justice Manual's procedures presumably included the information sought, because Justice Department procedures require that such a memorandum include an analysis of the applicable statutory aggravating factors and a discussion of "victim impact evidence." *See* Justice Manual, § 9-10.080 (A)(4)(6) and (7) (local prosecutors and Department of Justice must inquire into and consider, among other factors, "background … of the victim," "views of the victim's family," and "other victim impact evidence").

It is true that, in some cases, including the last one tried in this circuit, *Saipov* (SDNY), the government provided its informational outline nearer in time to the start of trial. But a close look at that case shows it actually supports Mr. Mangione's request for an earlier deadline.

First, the scheduling of the informational outline there was highly idiosyncratic: The government initially promised to provide it two months after the defense first asked for one. *See United States v. Saipov*, No. 1:17-cr-722, ECF No. 287, #300 at 8 (S.D.N.Y. 2020). But this never occurred, apparently because the prosecution was largely suspended due to the pandemic. When the defense next raised the issue in August 2022, ECF No. 462, two months before jury selection was set to begin, the court ordered the government to produce the outline by the following month, ECF No. 482, rather than on the eve of *voir dire* as the government sought, ECF No. 472 at 29. Second, the government's principal argument for delaying the informational outline in *Saipov* was that the case was "different from most (or all) other capital cases cited by the defendant" owing to the government's early full disclosure of extensive witness statements; that included victim- and survivor-impact witnesses, whom the government had repeatedly interviewed, which interviews it had memorialized in detail. ECF No. 472 at 34-35. No such disclosure has occurred in this case. Finally, it appears that the delay in production of the informational outline in *Saipov* until a month before the start of jury selection created serious and unnecessary logistical problems for the parties

and the court, by forcing the extensive litigation over the aggravating factors and evidence to play out while the trial was in progress, with numerous late-night filings, early-morning conferences, and extemporaneous rulings from the bench, especially as to the victim impact aggravator. *See, e.g.*, ECF Nos. 622, 627, 691, 698, 704, 707, 725, 730, 731, 732, 733, 735, 737, 739, 741, 742, 747, 749, 751, 753, 780. This Court can and should avoid that pitfall by ordering earlier production of an informational outline, which in turn will allow for litigation over the impact-aggravators to occur in the pretrial process.

## III.  Conclusion

For the foregoing reasons, and pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution and the Federal Death Penalty Act, the defendant requests that this Court grant this Motion for an Informative Outline of Aggravating Factors as described above.

Dated:  July 25, 2025
        New York, New York

                                              MOSKOWITZ COLSON
                                              GINSBERG & SCHULMAN, LLP

                                              By:  /s/ Avraham C. Moskowitz
                                                     Avraham C. Moskowitz
                                                     Eylan Schulman
                                                     Christopher R. Neff

                                              AGNIFILO INTRATER LLP
                                                  Karen Friedman Agnifilo
                                                  Marc Agnifilo
                                                  Jacob Kaplan

                                            *Attorneys for Luigi Mangione*