# GX 6

|  | **ALTOONA POLICE DEPARTMENT**<br>Altoona, Pennsylvania |
|---|---|
| | **GENERAL ORDER 3.1** |

| **Subject** ||
|---|---|
| Cell Area |||
| **Date of Issue** | **Effective Date** | **Expiration Date** |
| 01/2016 | 02/01/2016 | N/A |
| **PLEAC STANDARD Reference** |||
| 3.1.1; 3.1.2; 3.1.3; 3.1.4; 3.1.5; 3.1.6; 3.1.7; 3.1.8; 3.1.9; 3.1.10; 3.1.11; 3.1.12; 3.1.13; 3.1.14; 3.1.15; 3.1.16; 3.1.17; 3.1.18; 3.1.19; 3.1.20; 3.1.21; 3.1.22; 3.1.23 |||
| **Amends** || **Rescinds** |
| 02-16-16 |||
| **Index Words** |||
| Cell Blocks; Prisoners, Detainee Searches, Detainee Property, Intake, Booking |||
| **Distribution** |||
| All Sworn Personnel |||

**This order consists of the following sections:**

**3.1.1**     Training Required

**3.1.2**     Minimum Cell Conditions for Detainees

**3.1.3**     Safety and Sanitation

**3.1.4**     Evacuation Plan

**3.1.5**     Firearms Handling and Security

**3.1.6**     Required Security Checks

**3.1.7**     Supervision of Tools and Culinary Equipment

**3.1.8**     Cell Area Emergency Alert System

**3.1.9**     Required Detainee Searches

**3.1.10**    Secure Storage of Detainee Property

**3.1.11**    Intake Booking Form

**3.1.12**    Separation by Sight and Sound of Male, Female and Juvenile Detainees

**3.1.13**    Segregation of Detainees Under the Influence, Violent or Self-destructive

**3.1.14**    Maximum Capacity

**3.1.15   Verification of Detainee Identity Prior to Release**

**3.1.16   Return of Detainee Property Documented**

**3.1.17   Medical Assistance Procedures – Physician Approval**

**3.1.18   First Aid Kits Available and Inspected Weekly**

**3.1.19   RESERVED**

**3.1.20   Pharmaceuticals Within the Cell**

**3.1.21   Supervision of Detainees**

**3.1.22   Audio and/or Electronic Surveillance Equipment for Detainee Supervision**

**3.1.23   Visits to Detainees in the Cell Area**

**I.     Purpose**

The purpose of this general order is to provide personnel with guidelines on the operation of the Altoona Police Department's holding facility. This general order establishes procedures to ensure the facility is maintained in a secure and sanitary manner, with the safety of departmental personnel and detainees as a priority.

Cells are locations within law enforcement agencies specifically used for short term secure detention, without continuous physical attendance of law enforcement personnel, of persons awaiting transportation to another facility or for other law enforcement purposes. These areas are used to maintain custody of persons for extended periods of time, usually not to exceed twenty-four hours.

**II.    Policy**

It is the policy of the Altoona Police Department to provide secure, temporary holding cells for prisoners awaiting interrogation, arrest processing, arraignment, release, transfer to central booking and/or county prison, or other law enforcement procedures. All personnel shall comply with the procedures and any other requirements of this General Order.

**3.1.1    Training Required**

A.   Training and orientation of departmental personnel.

1.   All department personnel will be trained in the operation of the holding facility area. This training shall include:

a.   Detainee security entering/exiting and within the facility

b.   Precautions concerning the handling of prisoners

c. Physical layout and design

d. Fingerprinting

e. Photographing

f. Video surveillance equipment

g. Locking mechanisms on cells and key control procedures

h. Detainee Property Management

i. Interview and/or Interrogation rooms

j. Video arraignment process

k. Fire/smoke detectors and fire suppression equipment

2. Training shall be conducted with all employees. Such training shall be provided by a training officer, a FTO, or other officer designated by the Chief of Police.

a. Training fire suppression, i.e., proper use of a fire extinguisher shall be provided by a designated member of the Altoona Fire Department, or other qualified person designated by the Chief of Police.

b. Personnel shall receive initial training as listed in this section as a part of the Altoona Police Department Field Training Program, with retraining occurring at least once every three years for all personnel.

### 3.1.2   Minimum Cell Conditions for Detainees

A.   The Police Department cell area, in its current configuration, meets all State and Local building codes. While holding a detainee in the facility the following will apply to the well being of the detainee for minimum cell conditions:

1.  There will be adequate lighting inside the cells and cell block area.

2.  Fresh and purified air is circulated in the cellblock area by a ventilation system which regulates the temperature(s) on the 1st floor of police headquarters.

3.  Each cell is equipped with a flush toilet.

4.  Each cell is equipped with a water fountain and a wash basin.

5.  Detainees under normal circumstances should not be held in excess of eight (8) hours; therefore no bedding will be provided.

6.  Any other standards required under the laws and regulations of the commonwealth of Pennsylvania.

### 3.1.3   Safety and Sanitation

A.  Located within the cell area is various fire suppression equipment approved by local fire codes and/or Altoona Fire Department officials. This equipment is maintained by the department and tested at a minimum on a semi-annual basis. The testing or maintenance is conducted and documented on:

1.  Automatic fire alarm

2.  Heat and smoke detection system

3.  Firefighting equipment.

B.  A written plan describing fire prevention practices and procedures shall be posted in the cell area with documented inspections of the cell area as follows:

1.   A weekly documented visual inspection of the firefighting equipment by the Fire Inspector for the Altoona Fire Department.

2.   An annual documented testing of the firefighting equipment to be performed by the Fire Inspector of the Altoona Fire Department or his designee.

3.   A daily visual inspection by Altoona Police personnel; Required documented testing of the automatic fire detection devices and alarm systems on an annual basis shall be performed by the Fire Inspector of the Altoona Fire Department, or his/her designee. Each test will be documented as to the date, time, condition of the equipment, and who conducted the test(s).

### 3.1.4   Evacuation Plan

A.  All exits are clearly marked with overhead EXIT signs.

B.   Emergency Evacuations signs are posted at strategic locations in the cell area to direct person (s) to the closest exit and a hazard-free area.

C.  Upon the discovery of an evacuation emergency, officer(s) shall immediately notify the Blair County 911 Center via phone and/or radio and request whatever additional personnel and/or resources that are appropriate to safeguard detainees. In an emergency situation, police personnel are responsible for the removal of all person(s) or detainees within the cell area. The personnel shall guide person(s) within the holding facility to one of the exits listed on the floor plan that is posted.

D.  Detainees removed from the cell area shall be placed into a secure police vehicle for transport to another location if needed.

E.  Any detainee who complains of injury as a result of the need to evacuate shall be taken to the nearest medical facility by E.M.S.   Such detainee shall be accompanied by a sworn member of this agency and shall be detained securely.

### 3.1.5   Firearms Handling and Security

A.  Officer(s) are permitted to enter the cells and/or cell block area with firearms.

1.  After the detainee has been secured and a thorough search performed on the detainee in the intake area, two (2) armed officers shall escort the detainee to the cellblock to be held securely in a closed cell.

2. If the detainee requires post-arrest processing, (1) officer shall secure his/her firearm in one of the weapons storage lockers just outside the secure cell block area to process (fingerprint/photograph) the detainee. When practicable, a second officer will remain in the area of the cell block for the purposes of officer safety.

3. Upon the release of the detainee or upon transport to another facility, two (2) armed officers shall escort the detainee from the cell block to the intake area to be secured and prepared for release and/or transport.

### 3.1.6 Required Security Checks

A. It shall be the responsibility of the officer in control of the detainee to examine the interior of the cell prior to placement of the detainee within the cell and after the removal of the detainee from the cell.

1. This examination shall be for contraband and/or weapons.

2. Officer(s) should examine the cell for defects that would make it unsafe for detainees.

3. Officer(s) who observe any defects or find any contraband in the cell shall notify the shift supervisor immediately of such findings. An entry shall be made on the Administrative Log as well.

4. If the defect is of such a nature that it would endanger the officer or detainee, the officer will make a determination for the necessity of closing that part of the cell area until such repairs are made.

### 3.1.7 Supervision of Tools and Culinary Equipment

A. At any time repairs are necessary to any part of the cell area, there shall be no detainees in the immediate area of such work. In the event the repair is necessary and a detainee is present an officer shall be in the cell area for the duration of the repair.

1. Contract workers shall not enter the cell area without first obtaining authorization from the Shift Supervisor or other ranked officer.

B. Detainees shall not be given utensils or other culinary equipment. Meals provided to prisoners should be suitable for eating without utilizing utensils.

### 3.1.8 Cell Area Emergency Alert System

A. The cell area is equipped with a visual monitoring system utilizing cameras which record activity within the individual cells, processing, and the intake areas. These cameras are monitored by the desk officer who will alert the Blair County 911 Dispatch Center and/or additional personnel in the event of an emergency within the cell block area.

B. To protect the personal privacy of detainees, the video cameras utilized to monitor the cells shall not be accessible or visible to anyone other than necessary department personnel.

C. Panic Alarms

1. An officer working within the cell block area shall be equipped with a portable radio. The portable radio shall be equipped with an emergency alarm to notify Blair County 911 Dispatch of an emergency within the cell block area.

2. If an officer is not equipped with a portable radio or the radio fails to function properly, he/she will notify the Shift Supervisor (OIC), who will constantly monitor the activity in the cell block area and render assistance if necessary.

D. Detainee Distress

1. If a detainee is in distress or needs to communicate an emergency, he/she can verbally communicate this condition to the Turnkey Officer or the Shift Supervisor (OIC).

### 3.1.9 Required Detainee Searches

A. Inventory Search of the Detainee

1. All detainees placed in the cell block area shall be thoroughly searched by the processing officer, regardless of any prior searches that occurred in the field. The inventory search of the detainee shall be completed within the intake area upon arrival at APD Headquarters, and prior to entry within the cell block area.

2. Whenever possible, a search of the detainee shall be conducted by an officer or other member of the same sex as the detainee. This search should be conducted in a safe and discrete manner.

3. Special attention shall be given to search those areas where items could be hidden, such as jacket linings, hidden pockets, hats, belts, footwear, clothing seams, pant waists, and/or cuffs. The searching officers shall remove all personal property and itemize the property on the "Detainee Property Receipt". All sections of the form shall be completed.

4. Officers shall exercise special attention to detail to ensure that no detainee is placed in a cell while in possession of any item(s) which may be used to harm themselves or others, or otherwise be used for the purposes of escape.

5. Strip searches and body cavity searches are outlined in General Order 1.2

6. All property removed from the detainee shall be itemized utilizing a prisoner property form.

### 3.1.10 Secure Storage of Detainee Property

A. A documented itemized inventory of all items taken from the detainee must be completed at the time of booking prior to entry into the cell (Detainee Property Receipt)

1. Property withheld from the detainee shall be logged on the detainee property receipt as an itemized inventory. This is property that will be returned to the detainee on release or transferred with the detainee to another secured facility.

a. The detainee shall be required to sign the property receipt acknowledging the items in temporary police possession. If the detainee refuses to sign the form, such refusal shall be noted, and the property shall be entered into evidence.

2. Detainee personal property being held shall be bagged and stored in the Property Locker that corresponds with the cell number where the detainee is secured. The Property Locker shall be locked at all times when it contains detainee property.

a. Contraband, evidence and/or illegal weapons removed from the detainee shall be placed into evidence as required by agency policy and not returned to the detainee. Such items held will be noted on the

detainee property form as well as documented in the official incident report. These items shall be used in furtherance of criminal charges or additional charges.

### 3.1.11 Intake Booking

A. When a detainee is in custody an Intake Form shall be completed which shall include, but not be limited to, the following:

1. Personal identification information

2. Arrest Information

3. Property Inventory and disposition

4. Current health of detainee

5. Medications taken by the detainee

6. Behavior, involving state of consciousness, and mental status

7. Any body deformities, trauma markings, bruises, etc

B. Fingerprinting and photographing.

1. All persons arrested for a felony, misdemeanor or any summary offense which becomes a misdemeanor on a second arrest after conviction of that summary offense shall be fingerprinted with the fingerprints subsequently forwarded to the Central Repository within 48 hours of the arrest in accordance with the requirements of Pennsylvania Crimes Code § 9112.

a. Where complaints proceed by summons, and the charges meet the above criteria, the person charged shall be fingerprinted upon order of the court of proper jurisdiction and the fingerprints so obtained shall, within 48 hours, be forwarded to the Central Repository in a manner and in such a form as may be provided by the Central Repository.

1. All persons detained on charges (summary, misdemeanor or felony) that require fingerprinting and photographing shall be processed at the time of arrest unless the detainee is combative or it would otherwise be unsafe to do so.

2. When a detainee is in custody, and it is not possible to photograph or fingerprint them, the arresting officer shall indicate in the incident report narrative why the complete booking was not accomplished.

### 3.1.12 Separation by Sight and Sound of Male, Female and Juvenile Detainees

A. In no event shall a female detainee be housed in the same cell as a male detainee, or a juvenile housed with either. In all cases, adults and juveniles shall be separated from each other by sight and sound, in conformance to the laws and regulations of the Commonwealth of Pennsylvania.

1. Under normal circumstances, when the juvenile is not combative and the crime does not involve criteria for a direct file, juveniles shall be detained in a location separate from the cell area.

B. At any time there is a combination of male, female, or juvenile in the cell area, all doorways to the separate areas shall be closed to prevent contact and the area monitored by video or constant supervision by personnel.

**3.1.13 Segregation of Detainees under the Influence, Violent or Self-destructive**

A.   Any detainee who displays any of the following violent or self-destructive behavior shall be kept separate from other detainees until their behavior is determined to have deescalated to the point they can safely be held in a regular cell:

1.   Violent or self-destructive behavior may include:

a.   Severe alcohol intoxication.

b.   Bizarre mental behavior.

c.   Under the influence of controlled substances.

d.   Severe violent or other self-destructive behavior.

B.   In as much as the cell area is nothing more than a temporary detention area, any subject who displays the above criteria shall be processed and removed to a more secure holding facility or hospital as soon as possible. While being held in the cell area, officers shall secure a detainee exhibiting any/all of the aforementioned behaviors in the "Humane Restraint Chair" until he/she can be transferred to a more secure facility and/or a hospital. If the restraint chair is in use or otherwise unavailable, detainees may be handcuffed or shackled to a bench to prevent injury.

C.   Persons meeting the listed criteria shall be frequently monitored by personnel through electronic surveillance and through personal direct supervision not to exceed ten (10) minutes.

**3.1.14 Maximum Capacity**

A.   In the event this agency conducts a mass arrest program which will more than likely overcrowd the cell area, the following shall apply:

1.   Contact the court and request arraignments of detainees on charges.

2.   Additional officers shall be placed in the cell area to assist in control of the detainees.

3.   Evaluation of detainees currently held in the cells and possible movement of low threat detainees to the holding interview room.

4.   Release of detainees on summons as provided for in the Pennsylvania Rules of Criminal Procedure.

B. The maximum capacity of a holding cell is two (2) persons at any one time. This maximum shall not be raised, and the above procedure should be implemented by the shift supervisor or detail leader responsible for the mass arrest.

**3.1.15 Verification of Detainee Identity Prior to Release**

A.   All detainees held in the holding facility shall be positively identified before a detainee is released. Recommended methods of identification include, but are not limited to:

1.   Photo identification, i.e., operator's license, military ID, bank or other photo identification.

2.   Records checks with the Pennsylvania Department of Transportation or other state motor vehicle licensing agency.

3.  JNET databases available.

4.  Prior arrest records checked in FBI, NLETS, NCIC or other out of state law enforcement agency.

5.  Contact with family member who can produce identification of themselves and identify the detainee.

6.  Any other valid means available to the officer.

**3.1.16 Return of Detainee Property Document**

A.  Return of property upon release.

1.  When a detainee is released, the officer releasing them will return their property.

a.  Exception:

(1) When the detainee's property had been placed in Temporary Evidence for Safekeeping, a Property Custodian shall be contacted for the return of the detainee's property.

2.  The detainee will be required to sign the Detainee Property Receipt indicating they have received the property originally held from them.

3.  Property that will not be accepted by the Prison will be placed in Temporary Evidence following the same procedures as other property.

4.  At the time of receiving the held property, the detainee will be required to sign the Detainee Property Receipt, indicating they have received the property originally held from them.

**3.1.17 Medical Assistance Procedures – Physician Approval**

A.  At any time a detainee is being held within the cell area and is in need of medical attention, the detainee will be taken to the nearest available hospital for treatment.

1.  If the detainee has visible injuries or complains of a medical condition including but not limited to shortness of breath, chest pain, diabetic problems, abdominal pains, obstetric problems, or injuries which obviously require medical attention, the detainee will be evaluated by available AMED personnel and transported to a local emergency room by ambulance if possible.

a. The detainee is required to consent to treatment by AMED personnel and hospital staff in order to receive treatment. Treatment will be denied if consent is not given unless the injuries are of a serious nature, or the detainee is not able to refuse or consent to treatment. In this event, treatment shall be given by trained medical personnel.

2.  If the detainee is being committed for psychiatric evaluation following approval for an involuntary commitment, the detainee will be transported in accordance with the procedures of the medical officer and/or transporting agency.

3.  If the detainee is uncooperative it may be necessary to have an officer ride in the ambulance to assist in control of the detainee. If necessary, the detainee may be transported in restraints via police vehicle with approval of the shift supervisor.

B.  At any time the detainee makes a request for medical treatment the treatment will be arranged by the officer.

1. The procedure for requesting medical services shall be posted within the holding facility.

C.  This Section shall be reviewed by a licensed physician upon its adoption and at any point a modification is made, with the review documented in a letter to the department by the physician.

### 3.1.18 First Aid kits Available and Inspected Weekly

A.  There shall be an available first aid kit maintained in the cell area. This kit will be equipped with medical items that may be used to the extent of the first aid training held by agency personnel.

B.  The first aid kit will be inspected, maintained and replenished as necessary and inspected at least weekly.

1. Inspections will be documented.

### 3.1.19 RESERVED

### 3.1.20 Pharmaceuticals within the Cell

A.  No member of this department shall:

1. Dispense any pharmaceutical substance to a detainee at any time.

2. Dispense any over the counter substance to a detainee at any time.

B.  No detainee will be permitted to retain any medication upon being placed in a cell.

C.  All requests for medications by detainees shall be referred to EMS or shall be arranged by transportation of the detainee to a medical facility.

### 3.1.21 Supervision of Detainees

A.  Observation of detainees by agency staff.

1.  All detainees shall be personally observed by the arresting officer or other sworn member of the agency at least every **30 minutes**. This personal observation shall be documented on the supervision record form for the detainee.

2.  The personal observation of the detainee shall provide reasonable assurance that the safety and welfare of the detainee is adequately addressed.

3.  The personal observation of the detainee shall be accomplished by persons in the same structure where the detainee is being held.

4.  In the event there is an emergency involving the detainee, an immediate response shall be available within five (5) minutes by a primary responder.

a.  Backup responders shall be available within ten (10) minutes to respond and assist any primary responder, or respond in the event a primary responder is not available.

5. Non-sworn personnel authorized to respond shall be trained to recognize potential medical emergencies, provide medical assistance, and have adequate training in self defenses to protect themselves in cases of assault or subterfuge.

### 3.1.22 Audio and/or Electronic Surveillance Equipment for Detainee Supervision

A. When audio and/or visual electronic surveillance equipment is used for detainee supervision in the cell, the equipment shall be adjusted so as to allow the detainee to have a reasonable expectation of privacy.

### 3.1.23 Visits to Detainees in the Cell Area

A. Visitation of a detainee in the cell area is not permitted, as the cell area is not equipped for visitation(s).

**III.    Effective**

    **By order of:**

_____
**Chief Janice J. Freehling
Chief of Police
Altoona Police Department
Altoona, PA**

Revised 2-26-16          3.1.8          Detainee Distress  (page 6)          Chiefs Initial's_____