# AGNIFILO
# INTRATER

January 6, 2026

**Via ECF and Email**
The Honorable Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Mangione,* 25 Cr. 176 (MMG)

Dear Judge Garnett:

We submit this joint letter with the government in response to this Court's December 31, 2025, Order (1) directing defense counsel to inform the Court whether Mr. Mangione continues to seek suppression of his statements to law enforcement on December 9, 2024, providing his name as "Mark" and "Mark Rosario"; and (2) directing the parties to inform the Court whether they believe an evidentiary hearing is necessary to resolve the government's inventory search or inevitable discovery arguments.

## I.    Mr. Mangione's Motion to Suppress Statements

As to the Court's first inquiry, given the government's representation that it is only seeking to admit Mr. Mangione's December 9, 2024, statements to law enforcement providing his name as "Mark" and "Mark Rosario" (Dkt. 71: Gov't Response at 105), defense counsel hereby withdraws Mr. Mangione's motion to suppress his statements.

## II.    Mr. Mangione's Motion to Suppress the Contents of His Backpack

###     A.    Mr. Mangione's Position

As to the Court's second inquiry, defense counsel submits that, based on the current record, there are two reasons why this Court cannot deny Mr. Mangione's suppression motion relating to his backpack without first conducting an evidentiary hearing. First, as part of its omnibus response, the government argued that, even if the Altoona Police Department's searches of Mr. Mangione's backpack were improper, the evidence recovered from these warrantless searches would nevertheless be admissible because this evidence would inevitably have been recovered during a subsequent inventory search. (Gov't Response at 99–102.)[1] In support of this claim, the

---

[1] As noted in Mr. Mangione's omnibus motion, the government would need to establish the following three elements listed in *United States v. Mendez*, 315 F.3d 132, 138 (2d Cir. 2002) before it could rely on a mix of inevitable discovery through a valid inventory search to admit otherwise illegally-obtained evidence: (1) that the government had legitimate custody of the property being searched so that an inventory search would have been justified; (2) that when the police in the

government argues that it would meet the second *Mendez* factor because the Altoona Police Department had "established procedures pursuant to which the property of arrestees is routinely searched and inventoried." (Gov't Response at 100.) One of the written procedures that the government relies on is Altoona Police Department General Order 3.1.10, which addresses the "Secure Storage of Detainee Property." (*Id.* at Ex. 6.) This section, however, refers to a "documented itemized inventory of all items taken from the detainee," that is, property taken off the detainee's person—as opposed to other property that law enforcement recovered at the time of a detainee's arrest that was not on the detainee's person. Notably, at Mr. Mangione's state suppression hearing, Sgt. Jon Burns of the Altoona Police Department testified that General Order 3.1.10 pertained to inventorying property that was taken from the detainee's person and "any property that he had with him at the time of being detained or arrested." (Hr. 1107.) Given this testimony, it is unclear whether this provision would pertain to Mr. Mangione's backpack, which was not in Mr. Mangione's control at the time he was detained or arrested. At a minimum, this ambiguity presents a factual dispute that cannot be resolved on the current record. Thus, without witness testimony regarding this provision, the government cannot establish that the Altoona Police Department had procedures in place regarding inventory searches of a defendant's backpack that was not in his control at the time of his arrest.

Similarly, the government relies on an undated document from the Altoona Police Department Probationary Officer Training Task entitled "Custodial Arrest Procedures – Summary, Misdemeanor, and Felony Offenses." (*Id.* at Ex. 5.) Notably, this document is for probationary officer training and is not part of the Altoona Police Department's General Orders. Consequently, it is unclear what role, if any, this undated probationary training document has in establishing the Altoona Police Department's current procedures.[2] In contrast, General Order 3.1 (which includes General Order 3.1.10 discussed above), specifically states that the "purpose of this general order is to provide personnel with guidelines on the operation of the Altoona Police Department's holding facility. This general order establishes procedures to ensure the facility is maintained in a secure and sanitary manner, with the safety of departmental personnel and detainees as a priority." (*Id.* at Ex. 5 at p. 2.) Therefore, based on the current record and absent an evidentiary hearing, this Court cannot rely on this undated probationary training document to determine that the government has established the second *Mendez* factor.

Second, even assuming the government could establish that the Altoona Police Department had procedures in place regarding inventory searches of a defendant's backpack that was not in his control at the time of his arrest, an evidentiary hearing would still be required before the Court could determine that the government has met the third *Mendez* factor, i.e., that the inventory procedures would have inevitably led to discovery of the challenged evidence. Specifically, to the extent the Altoona Police Department's procedures set guidelines for inventory searches, these

---

police agency in question conducted inventory searches, they did so pursuant to established or standardized procedures; and (3) that those inventory procedures would have inevitably led to the discovery of the challenged evidence. (Dkt. 59-2: Omnibus Motion at 33 (quoting *Mendez*).)

[2] Tellingly, while the Altoona officers and the New York County District Attorney's Office attempted to use General Order 3.1.10 at the state suppression hearing to establish a guideline for inventory searches, neither law enforcement nor the state prosecutors even attempted to rely on this undated probationary officer training document.

guidelines would only allow law enforcement to inventory the fact that they recovered a journal. These procedures would not allow law enforcement to read the contents of the journal absent a search warrant. Here, however, law enforcement officers read through the journal while conducting their warrantless searches. (Hr. 1101–02 (Sgt. Jon Burns testifying that he read through portions of the journal "out of curiosity."); Hr. 1234–35 (Sgt. Eric Heuston testifying that he read through the journal and photographed pages that "appeared pertinent to the [NYPD's] investigation."); Hr. 735 (Patrolwoman Christy Wasser testifying that she "flipped through" a few pages of the journal).) Because law enforcement's conduct in reading the journal exceeded its written inventory search procedures, the government cannot establish—based on the current record—that the inventory procedures would have inevitably led to discovery of the contents of Mr. Mangione's journal, as required by the third *Mendez* factor. Accordingly, while an evidentiary hearing is not required for this Court to reject the government's inevitable discovery/inventory search arguments as to the contents of the journal on the current record, the Court would require additional factual development through an evidentiary hearing before finding that the government has satisfied the third *Mendez* factor.[3]

### B.     The Government's Position

The Government disagrees with the defendant's characterization of the facts purportedly in dispute. The Court can resolve each of the issues raised based on the record already before it, without any need for additional fact development or an evidentiary hearing. The majority of the defendant's complaints stem from his interpretation and application of *United States v. Mendez*, 315 F.3d 132, 138 (2d Cir. 2002), which presents a pure question of law appropriately decided by the Court. The defendant has not identified any genuine material factual dispute that would preclude resolution on the existing record, which is more than sufficient for the Court to decide the pending issues as a matter of law.

Respectfully submitted,

/s/
Avraham C. Moskowitz          Karen Friedman Agnifilo
Eylan Schulman                Marc Agnifilo
Christopher Neff              Jacob Kaplan
MOSKOWITZ COLSON              AGNIFILO INTRATER LLP
GINSBERG & SCHULMAN

cc:     Gov't Counsel (by ECF)

---

[3] In a footnote, the government argues, based on *United States v. Whitehorn,* 829 F.2d 1225, 1230 (2d Cir. 1987), that the contents of the backpack would also be admissible based on the inevitable discovery through subsequent search warrants by the government, the New York County District Attorney's Office and the District Attorney of Blair County. (Gov't Response at 102 n.32.) However, these search warrants rely heavily on information illegally obtained through the unconstitutional search of Mr. Mangione's backpack and journal. Defense counsel submits that, once all the tainted information is removed from the warrants, the search warrant application lacked probable cause supporting the warrants.