

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th floor*
*New York, New York 10278*

January 7, 2026

**VIA ECF**

Honorable Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Luigi Nicholas Mangione*, 25 Cr. 176 (MMG)

Dear Judge Garnett:

    In accordance with the Court's December 31, 2025 Order, (Dkt. No. 79), the Government respectfully submits this sur-reply to respond to arguments the defendant raised for the first time in his reply brief, (Dkt. No. 76). Specifically, the Government addresses the defendant's contention that the Attorney General's prior employment with Ballard Partners created a conflict of interest requiring recusal and that the Attorney General's failure to recuse herself violated the defendant's due process rights. For the reasons set forth below, these arguments are meritless.

### The Defendant Fails to Identify a Conflict or Duty of Recusal

    As a threshold matter, the defendant's description of the Attorney General's financial relationship with Ballard Partners is incomplete and misleading. The defendant quotes from the Attorney General's publicly filed financial disclosure form in which the Attorney General states that she "will continue to participate in (a Ballard Partners) defined contribution plan." (Def. Reply at 3). He then asserts that she continues to profit from Ballard's connection to UnitedHealth Group ("UHG"), inviting the Court to believe that the Attorney General stands to benefit from Ballard's current UHG lobbying revenue. (Def. Reply at 1, 4). But the defendant omits critical language from the financial disclosure report which makes clear that Ballard "will not make further contributions after my separation" to the defined contribution plan.[1] That omission creates the misimpression that the Attorney General stands to profit from Ballard's ongoing representation of UHG, (Def. Reply at 4), when in fact she disclosed that Ballard would make no further contributions to her plan upon her confirmation by the Senate and after she left that firm.

    There is nothing in the Attorney General's financial disclosure form that suggests receipt of any ongoing income, distributions, partnership draws, or remuneration from Ballard Partners in

---

[1] Attorney General Pam Bondi's Public Financial Disclosure Report, at 5 (Jan. 3, 2025), https://extapps2.oge.gov/201/Presiden.nsf/PAS+Index/ABF60CD8EC97BBB585258C150032DCB2/$FILE/Bondi%2C%20Pam%20%20final278.pdf

any form. According to the disclosure form, the Attorney General holds a standard 401(k) account reflecting past, fully earned compensation to which Ballard has agreed not to make additional post-separation contributions. The defendant's narrative collapses under the weight of his own assumptions, because a financial conflict theory requires a demonstrable financial benefit tethered to the litigation. Where no present or future financial gain exists, there is no conflict. Therefore, because the defendant is unable to identify any pecuniary benefit to the Attorney General, his conflict-of-interest claim cannot stand as a matter of law. *See Wright v. United States*, 732 F.2d 1048, 1058 (2d Cir. 1984) (finding no due process violation where prosecutors "were not utilizing the criminal process to advance their own pecuniary interests"); *United States v. Gerrans*, 752 F. Supp. 3d 1120, 1127 (N.D. Cal. 2024) (no due process violation where defendant's conflict of interest claim "does not reveal a 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedures.'") (quoting *Wright*, 732 F.2d at 1057)); *Klein v. Jones*, No. 85 Civ. 3685, 1986 WL 14596, at *10 (E.D.N.Y. Oct. 22, 1986) (no due process violation where defendant was "unable to demonstrate that [prosecutor] had an actual pecuniary link to the outcome of this litigation").

Similarly misleading is the defendant's characterization of the Attorney General's January 14, 2025 ethics letter. (Def. Reply at 4-5). The defendant claims that the Attorney General vowed "not [to] personally and substantially involve herself in any matter involving a client of Ballard Partners for a year after her Senate confirmation," and then accuses her of violating that supposed vow by acting in this case. (*Id.* at 5). However, that is not what the letter says. The Attorney General committed not to participate for one year after her resignation from Ballard Partners in any matter in which Ballard Partners, or a client of Ballard Partners was a <u>party</u>, absent authorization under 5 C.F.R. § 2635.502(d).[2] Neither UHG, nor UnitedHealthcare ("UHC"), nor Ballard Partners is a party in this criminal case and therefore the Attorney General had no ethical, statutory, or constitutional obligation to recuse herself on the basis of those entities' interests. Any collateral reputational or emotional interest those companies may have in the outcome does not transform them into parties or entities whose fortunes are so intertwined with the Attorney General's personal finances as to trigger a constitutional or ethical duty to recuse. The defendant's assertion that the Attorney General vowed not to participate in any matter involving a client of her former firm, regardless of party status, is inaccurate.

### The Defendant Fails to Identify Any Statutorily Based Conflict or Duty of Recusal

Tellingly, the defendant does not even cite—let alone attempt to satisfy—the governing statutory standard for federal conflicts of interest. *See* 18 U.S.C. § 208(a). Under § 208(a), a prosecutor may not participate in a judicial proceeding in which he or she has a pecuniary interest. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987) (citing 18 U.S.C. § 208(a)). The defendant fails to invoke § 208(a) because he cannot do what the statute requires: identify any concrete, non-speculative financial benefit the Attorney General stands to gain from this prosecution or from a capital outcome in this case. That omission underscores that his theory rests on insinuation, not on a cognizable pecuniary interest within the meaning of § 208(a). Courts applying § 208(a) confirm that such a conflict cannot be premised on the kind of conjectural,

---

[2] Ethics Letter, at 2 (Jan. 14, 2025), https://extapps2.oge.gov/201/Presiden.nsf/PAS+Index/ FC3B6F6F496E257B85258C150032F344/%24FILE/Bondi,%20Pam%20%20finalEA.pdf

attenuated interest the defendant posits here: "a prosecutor, like a judge, cannot be disqualified on the basis of a financial interest that is too remote, insubstantial, or speculative to create an actual or potential conflict of interest." *United States v. Farrell*, 115 F. Supp. 3d 746, 756 (S.D. W. Va. 2015) (finding no violation of § 208(a) or due process despite pendency of class action lawsuit in which prosecutors were putative members). Likewise, there is no § 208(a) conflict "on the basis of [] remote, contingent, indirect or speculative interests." *Scott v. Metro Health Co.*, 234 F. App'x 341, 357 (6th Cir. 2007). Nor is § 208(a) violated where the alleged tie is as indirect as a prosecutor's spouse working at a law firm that represents a non-party insurer litigating against the defendant. *See United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (finding no § 208(a) violation where prosecutor's husband worked at a law firm representing an insurance company that sued the defendant). The defendant's inability to identify any present or future financial benefit defeats his claim under both due process principles and § 208(a).

### The Defendant Fails to Demonstrate Any Influence on the Death Authorization Decision

Even accepting the false assumption that the Attorney General received an ongoing financial benefit from her former firm—the defendant still has not shown the Attorney General's decision to authorize the death penalty in this case was influenced in any way by this purported benefit. The defendant identifies no communication from Ballard, UHC, or UHG to the Attorney General or Department decision-makers about whether to seek capital charges, which statutory aggravators to allege, or how to structure the Notice of Intent to Seek the Death Penalty. Nor has the defendant attempted to articulate how the nature of the defendant's sentence could financially benefit the Attorney General. There is simply no factual basis for the assertion that outside corporate interests influenced the Attorney General's charging decision in any fashion. The defendant's insinuations otherwise rest on an inaccurate financial narrative.

The defendant errs in analogizing this case to *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980). *Marshall* addressed whether a cost reimbursement mechanism under the Fair Labor Standards Act created an unconstitutional risk that agency civil penalty assessments would be inflated to fund enforcement operations. *Id.* at 243-44. The Supreme Court held the scheme constitutional because no official personally profited, any institutional benefit was too remote, and the adjudicator at the administrative hearing not the enforcement official, served as the neutral decision maker. *Id.* at 250-51. Here, unlike in *Marshall*, the Attorney General is not operating under a statutory scheme that reimburses her office based on penalties she assesses, nor is she acting in a quasi-adjudicative role. *Id.* at 243. Indeed, the defendant has not articulated—and the Government cannot conceive—of a basis to believe that seeking the death penalty in a murder case would inure to the financial benefit of UHG/UHC, or Ballard, much less the Attorney General. The defendant's reliance on *Marshall* attempts to stretch a case about administrative budgetary reimbursement for civil fines into the context of federal capital charging discretion, where the decision is guided by an internal DOJ review process and where no decision in this litigation could yield any personal or institutional financial gain. Accordingly, *Marshall* does not govern capital authorization decisions made through the DOJ's established protocol, and provides no basis to infer bias, require recusal, or strike the Notice of Intent.

Even so, the holding in *Marshall* is instructive, while noting that "rigid standards of neutrality cannot be the same for [a] prosecutor as for judges," the Court found that a due process

problem arises only where there is a "realistic possibility" the decisionmaker's judgment "will be distorted" by a personal or institutional interest. *Id.* at 250. Here, the Attorney General authorized capital charges pursuant to the Justice Manual's Capital Case Protocol, a multi-layered review process. The only "financial interest" the defendant identifies—a frozen retirement plan reflecting past, fully earned compensation with no new post-separation contributions—is not the type of present or prospective economic incentive contemplated in *Marshall*.

### The Defendant Fails to Demonstrate "Actual Prejudice"

The defendant argues that the Attorney General's prior employment with Ballard Partners, combined with purported public statements, requires the Court to dismiss the indictment or strike the Government's Notice of Intent. But the defendant's conflict narrative, including his references to the Attorney General's former role at Ballard Partners, does not establish that her past employment has affected the integrity or fairness of this prosecution. The defendant instead relies on Local Criminal Rule 23.1(d), asserting that its presumption of potential trial interference supplies a basis to dismiss the indictment or strike the Notice of Intent. The defendant's attempt to equate the presumption of prejudice in Local Rule 23.1(d) with the "actual prejudice" required for dismissal or judicial override of an Executive charging decision is legally incorrect. The Supreme Court has drawn a sharp distinction between publicity that may violate professional conduct standards, and the far more demanding showing required to upset a grand jury determination or prosecutorial discretion under the Constitution. For example, in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988), the Court held that dismissal of an indictment requires proof that misconduct "substantially influenced the grand jury's decision to indict" or leaves "grave doubt" that the decision was free from such influence. The defendant fails to meet this exacting standard, because a Local Rule's *ex ante* presumption about the risk of publicity cannot substitute for the *ex post* record based inquiry required by *Bank of Nova Scotia*. The Local Rule's presumption is a professional prophylaxis, not a constitutional evidentiary standard.

Simply put, Local Rule 23.1 allows courts to regulate attorney speech to protect trial fairness, it does not authorize the judicial remedies the defendant seeks here. *See, e.g., Lauro v. Charles*, 219 F.3d 202, 209–10 (2d Cir. 2000) (condemning a staged perp walk in the civil context but not treating it as grounds for dismissal of criminal charges). Nor can the defendant transform the rule's professional speech restrictions into proof that a criminal proceeding was constitutionally tainted. The rule's presumption addresses the likelihood of potential interference, not proof that charging or grand jury judgment was actually compromised. Notably, the defendant fails to identify a single federal case in which any court has dismissed an indictment—or struck a Notice of Intent to Seek the Death Penalty—based on Local Rule 23.1, underscoring that his requested remedy has no support in precedent.

Moreover, as the defendant himself concedes, a district court's authority "to dismiss an indictment to eliminate prejudice or deter official misconduct" is "narrowly circumscribed" and applies only where the misconduct "amounts to a violation of one of those few clear rules which were carefully drafted by [the Supreme] Court and by Congress." (Def. Opening Br, at 30, Dkt. No. 51) (quoting *United States v. Silver*, 103 F. Supp. 3d 370, 376 (S.D.N.Y. 2015)). That concession defeats his own argument. The defendant acknowledges that only a carefully drafted Supreme Court rule or act of Congress can supply the predicate for dismissal, yet Local Rule 23.1

is neither—it is a professional conduct rule governing attorney speech, not a constitutional or statutory command enacted by Congress or prescribed by the Supreme Court.

The defendant's position therefore contradicts the very limitation he accepts: if the Court's authority to dismiss is triggered only by violation of one of the few clear Supreme Court or congressional rules, then dismissal or striking capital authorization cannot rest on a local attorney speech rule that Congress did not enact and the Supreme Court did not prescribe. The defendant's theory thus fails on its own terms, because it seeks a remedy that is foreclosed by the narrow, record-based standard of dismissal he concedes governs the Court's authority.

The defendant relies heavily on *United States v. Lopez-Matias*, 522 F.3d 150 (1st Cir. 2008), to argue that the Court should strike the Government's Notice of Intent. (Def. Reply at 14-16.). However, the defendant's reliance on *Lopez-Matias* begins with a fundamental error: it mischaracterizes the First Circuit's holding, which in fact vacated—not affirmed—the district court's order striking the Government's Notice of Intent. (Def. Reply at 14) (describing the First Circuit's holding as "requir[ing] a lesser degree of prejudice to justify striking a notice of intent"). Contrary to the defendant's suggestion, the First Circuit's reversal of the district court's order striking the Government's Notice of Intent was based on the Government's failure to comply with a Local Rule and the defendants' claim that they lacked a meaningful opportunity to present mitigation before capital authorization—the same claims the defendant makes here. 522 F.3d at 151-55. The First Circuit did so because of the district court's failure to identify actual prejudice. *Id.* at 154 ("Here, the district court suggested no actual, let alone structural, prejudice") (citing *Bank of Nova Scotia*, 487 U.S. at 257). The defendant seizes on the panel's passing reference to "some prejudice" to imply a relaxed dismissal standard, but that phrase appears only in non-binding *dicta*, not the Court's reasoning or judgment, and the panel did not purport to alter the constitutional rule governing remedies to grand jury irregularities. The Court's reference to "some prejudice" was offered in the context of appellate narration, not a doctrinal reformulation, and it was not intended to modify the controlling constitutional threshold. *Id.* at 158-59. In fact, the First Circuit repeatedly referenced and relied on the standard set forth *Bank of Nova Scotia*. *Id.* at 157.

The defendant's arguments fare no better under the presumed prejudice standard in *Skilling v. United States*, 561 U.S. 358, 379–81 (2010). *Skilling* makes clear that presumed prejudice "attends only the extreme case," and arises only where publicity so saturates the proceedings that the courthouse is "utterly corrupted" or "bedlam reigned," conditions not present here. 561 U.S. at 380-81. The Court further stressed that "[p]rominence does not necessarily produce prejudice, and juror *impartiality*, we have reiterated, does not require ignorance." *Id.* at 381 (emphasis in original). Here, the defendant offers no showing that the proceedings have occurred in an atmosphere incapable of being cured through *voir dire*, juror questionnaires, or trial management.

Accordingly, the defendant's claims fail to meet both the record based actual prejudice standard of *Bank of Nova Scotia* and the narrow, extraordinary, presumed prejudice threshold of *Skilling*. The Court should reject the defendant's effort to transform Local Rule 23.1 into a constitutional indictment veto or a capital notice striking rule, and instead rely on the established safeguards designed to address publicity related risk through searching *voir dire* and careful trial management. *Skilling*, 561 U.S. at 384 , 425-26; *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991); *United States v. Griffin*, No. 94 Cr. 631 (AGS), 1996 WL 140073, at *1 (S.D.N.Y. Mar. 27, 1996).

        Respectfully submitted,

        SEAN S. BUCKLEY
        Attorney for the United States Attorney
        Acting Under Authority Conferred by
        28 U.S.C. § 515

By:     /s/
        Dominic A. Gentile / Jun Xiang
        Alexandra Messiter / Thomas John Wright
        Assistant United States Attorneys
        (212) 637-2200